UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

140 WEST 121 LLC,                                    Chapter 11
                                                     Case No. 23-11301(DSJ)

                         Debtor.
------------------------------------------------------------X

## ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363

Upon the Debtor's Motion Seeking Entry of an Order Authorizing Use of Cash Collateral dated October 24, 2023 (the "Motion")[ECF No. 23], the Court having reviewed the Motion; and upon the other filings and pleadings in this Chapter 11 case; and a hearing having been held on November 9, 2023 to consider the relief sought in the Motion (the "Hearing"), and notice of the Hearing having been given in accordance with Bankruptcy Rules 2002, 4001, and 9014; and the Hearing to consider the relief requested in the Motion having been held and concluded; and no objections to the relief requested having been filed; and it appearing to the Court that granting the relief set forth herein is necessary to avoid immediate and irreparable harm, is otherwise fair and reasonable and in the best interests of the Debtor, its estate, its creditors and equity holder, and essential for the continued operation of the Debtor's Property (as defined below); and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    This Court has jurisdiction over this case and the parties and property affected hereby pursuant to 28 U.S.C. §1334. This is a "core" proceeding pursuant to 28 U.S.C. §157. Venue is proper in this Court pursuant to 28 U.S.C. §1408.

B.     On August 14, 2023 (the "Petition Date"), 140 West 121 LLC, the above- captioned debtor and debtor-in-possession (the "Debtor"), filed a voluntary petition for reorganization under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code") thereby commencing this chapter 11 case (the "Bankruptcy Case").

C.     Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor has retained possession of its assets and is authorized thereby, as a debtor-in-possession, to continue the operation and management of its Property.

D.     No trustee, examiner or statutory committee has been appointed heretofore.

**Debtor's Stipulations**

E.     The Debtor is the owner of certain real property located at 140 West 121st Street, New York, New York 10027 (the "Property"), which is a 2-unit residential townhouse. Based upon an appraisal dated December 15, 2022, the Property is valued at $3,800,000.

F.     The Debtor asserts that pursuant to the FF Funding Note[1] dated January 10, 2018, the Debtor was indebted to Family First Funding LLC ("FF Funding") in the principal amount of $2,681,250 (the "FF Funding Note"). The FF Funding Note provided for an annual interest rate of 7.505% and the repayment of the FF Funding Note in monthly installments commencing on March 1, 2018, with a maturity date of February 1, 2048.

G.     The Debtor's obligations under the FF Funding Note are secured by, a senior lien on the Debtor's Property and a senior lien on all of the Debtor's personal property including the rents generated from the Property (the "Cash Collateral", together with the other personal property and the Property, the "Collateral"), pursuant to a Consolidation, Extension, and Modification Agreement dated June 10, 2018 (the "FF Funding Mortgage", together with the FF Funding Note,

---

[1] Capitalized terms not defined herein shall have the same meaning as in the Motion.

2

the "FF Funding Loan Documents"). The FF Funding Mortgage was recorded on February 8, 2018 in the Office of the City Register of the City of New York, CRFN: 2018000047555.

  H. On or about May 16, 2019, FF Funding executed an Assignment of Mortgage assigning the FF Funding Loan Documents and all of its right, title and interest thereto to Invictus Residential Pooler L.P., not its individual capacity but solely as administrator for Invictus Residential Pooler Trust 1A/2A ("Invictus"), which Assignment of Mortgage was recorded on May 20, 2019 in the Office of the City Register of the City of New York, CRFN: 2019000158452.

  I. On or about November 12, 2020, Invictus executed an Assignment of Mortgage assigning the FF Funding Loan Documents and all of its right, title and interest thereto to Wilmington Savings Fund Society, FSB, FSB, not in its Individual Capacity but Solely as Owner Trustee for Verus Securitization Trust 2020-NPL ("Wilmington"), which Assignment of Mortgage was recorded on November 19, 2020 in the Office of the City Register of the City of New York, CRFN: 2020000325269.

  J. On or about May 23, 2023, Wilmington executed an Assignment of Mortgage assigning the FF Funding Loan Documents and all of its right, title and interest thereto to Morgan Stanley Mortgage Capital Holdings LLC ("Morgan Stanley"). The Morgan Stanley Assignment was recorded on September 7, 2023 in the Office of the City Register of the City of New York, CRFN: 2023000228334.

  K. On or August 4, 2023, Morgan Stanley executed an Assignment of Mortgage assigning the FF Funding Loan Documents and all of its right, title and interest thereto to U.S. Bank. The US Bank Assignment was recorded on September 7, 2023 in the Office of the Register of the City of New York, CRFN: 2023000228335.

L.      The Debtor believes that, as of the Petition Date, approximately $3,284,829.76 plus an unliquidated amount for legal fees and other charges, as permitted under the FF Funding Loan Documents was due and owing thereunder.

M.      The Debtor asserts that **under** the Navigator Note dated February 14, 2019, the Debtor was indebted to Navigator Business Services LLC ("Navigator") in the principal amount of $430,000 (the "Navigator Note").  The Navigator Note provided for an annual interest rate of 13.00% and the repayment of the Navigator Note in twelve monthly installments commencing on March 14, 2019, with a maturity date of February 14, 2020. **[DSJ 11/27/23]**

N.      The Debtor's obligations under the Navigator Note are secured by, among other things, liens on the Property pursuant to a Mortgage Agreement dated February 14, 2019 (the "Navigator Mortgage") and Assignment of Leases and Rents dated February 14, 2019 (the "Navigator ALR" and together with the Navigator Note and the Navigator Mortgage filed in connection therewith, the "Navigator Loan Documents", together with the FF Funding Loan Documents, the "Loan Documents"). The Navigator Mortgage was recorded on February 26, 2019 in the Office of the City Register of the City of New York, CRFN: 2019000064860. The Navigator ALR was recorded on February 26, 2019 in the Office of the City Register of the City of New York, CRFN: 2019000064861.

O.      Additionally, on February 15, 2019, Navigator duly perfected its lien in the Collateral by filing a UCC-1 Financing Statement with the New York Secretary of State bearing filing number 201902158072601.

P.      The Debtor asserts that as of the Filing Date, the Debtor was indented to Navigator in the approximate amount of $517,878.40.

Q.  The Debtor acknowledges, on its own behalf and not on behalf of the estate, that the Debtor's obligations under the Loan Documents (the "Pre-Petition Obligations") and the liens and security interests provided for thereunder (the "Pre-Petition Liens") in all of the Debtor's cash and cash equivalents may constitute cash collateral within the meaning of §363(a) of the Bankruptcy Code.

**Bankruptcy Court Findings**

R.  The use of the Cash Collateral is essential to the continued operation and preservation of the Debtor's Property.

S.  Based on the record before this Court, there is good cause for the Court to authorize the Debtor's use of Cash Collateral under the terms and conditions stated herein.

Based upon the foregoing findings and conclusions, and good and sufficient cause appearing therefor,

**IT HEREBY IS ORDERED**:

1. The Motion is granted to the extent provided in this Order.

2. Pursuant to section 363(c) of the Bankruptcy Code, the Debtor is authorized to use Cash Collateral subject to the terms of this Order, in accordance with the budget annexed hereto (the "Budget"), subject only to a ten percent (10%) variance on total operating disbursements, and for no other purpose without the prior written consent of the Secured Creditors or further order of the Court to the Motion.

3. Except as otherwise provided herein, all of the terms and provisions of the underlying Loan Documents are deemed to be valid, binding and enforceable against the Debtor as if same had been re-executed by the Debtor, subject to further Order of the Court and subject to all claims and defenses, if any, that the Debtor had as of the Petition Date.

4. Unless extended further with the written consent of the Secured Creditors, the authorization granted to the Debtor to use Cash Collateral under this Order shall terminate immediately upon the earliest to occur of the following (the date of such termination being the "Termination Date"): (i) the entry of an order dismissing the Bankruptcy Case; (ii) the entry of an order converting the Bankruptcy Case to a case under chapter 7; (iii) the entry of an order appointing a trustee or an examiner with expanded powers with respect to the Debtor's estate or the Property; (iv) entry of an order reversing, vacating, or otherwise amending, supplementing or modifying this Order; or (v) entry of an order granting relief from the automatic stay to any creditor holding or asserting a lien in or against the Collateral. Notwithstanding any such termination, the rights and obligations of the Debtor and the rights, claims, liens, priorities, and other benefits and protections afforded to the Secured Creditors under this Order shall remain unimpaired and unaffected by any such termination and shall survive any such termination.

5. Notwithstanding section 552 of the Bankruptcy Code to the contrary, the Secured Creditors shall have, and are hereby granted, effective as of the Petition Date, valid, binding, enforceable, and automatically perfected post-petition liens that are co-extensive with the Secured Creditors' prepetition liens and security interests in: (i) all currently owned or hereafter acquired property and assets of the Debtor to the extent that such property and asserts constitute Collateral under the Loan Documents, of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereinafter acquired or arising; and (ii) all proceeds, products, and profits of the foregoing (the "Replacement Liens") in the same nature, extent and validity as existed on the Petition Date.  The Replacement Liens are being given to the extent of any decrease in the value of the Collateral or Cash Collateral.  The Replacement Liens shall be effective and perfected as of the date of the entry of this Order and without the necessity of the execution by the

Debtor of any security agreement, pledge agreement, financing statement or any other documents.

6. The Replacement Liens granted to the Secured Creditors under this Order shall be subject to: (i) United States Trustee fees pursuant to 28 U.S.C. Section 1930 and interest pursuant to 31 U.S.C. Section 3717; and (ii) the payment of any claim of any subsequently appointed Chapter 7 Trustee to the extent of $10,000 (collectively, the "Carve-Outs"); and (iii) estate causes of action and the proceeds of any recoveries of estate causes of action under Chapter 5 of the Bankruptcy Code. Nothing contained in this paragraph shall be deemed to impose the foregoing Carve-Outs as against the Debtor's real property or any proceeds thereof generated as a result of U.S. Bank's enforcement of its Judgment of Foreclosure and Sale following entry of an Order granting relief from the automatic stay with respect thereto.

7. In the event Debtor defaults or violates this Order, either Secured Creditor shall be entitled to request a hearing within fourteen (14) days (or if immediate and irreparable injury, loss or damage may occur, an emergency hearing within 48 hours) to seek relief including but not limited to relief from the automatic stay.

8. The findings contained in this Order are binding upon the Debtor and all parties in interest (including but not limited to any statutory committee appointed in the Chapter 11 case), and any application of Cash Collateral under this Order shall be indefeasible, unless (a) an action challenging the validity, enforceability or priority of the Cash Collateral, related liens, the Pre-Petition Obligations, the Replacement Liens, or the Pre-Petition Liens as they relate to Cash Collateral is properly commenced no later than ninety (90) days from the entry of a Final Order or an extension of such time is obtained, or is granted by the Court for cause, and (b) a final Order is entered in favor of the plaintiff or movant in any such timely and properly filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is properly

commenced as of such date, the Cash Collateral and the Pre-Petition Obligations shall constitute allowed claims for all purposes in the Chapter 11 case and any subsequent Chapter 7 case, the Replacement Liens and the Pre-Petition Liens shall be deemed legal, valid, binding, perfected, not subject to subordination and otherwise unavoidable, and the Cash Collateral, the Pre-Petition Obligations, the Replacement Liens, and the Pre-Petition Liens shall not be subject to subordination, avoidance, or any other further challenge by any party in interest seeking to exercise the rights of the Debtor's estate, including, without limitation, and successor(s) thereto, subject, however, to valuation for purposes of Sections 506(a) and (b) and 1129 of the Bankruptcy Code. If any such action is properly commenced, the Bankruptcy Court shall determine the validity, enforceability, and priority of the Cash Collateral, the Pre-Petition Obligations, the Replacement Liens and the Pre-Petition Liens, but only with respect to and to the extent of the objections raised in such adversary proceeding or contested matter, and all other matters and objections not raised in such adversary proceeding or contested matter shall be deemed forever waived.

9. Nothing in this Order will be deemed or construed as an admission or waiver by the Debtor or the Secured Creditors as to adequate protection, or any other issue in the Bankruptcy Case. Nothing in this Order shall prejudice the Secured Creditors' right to seek an order of this Court prohibiting the Debtor's use of Cash Collateral, relief from the automatic stay, or seek any other or supplemental relief that the Secured Creditors may deem necessary and appropriate under the circumstances; and nothing in this Order prejudices the Debtor or any other party in interests' right to oppose such relief requested by the Secured Creditors.

10. To the extent permitted by applicable law, the provisions of this Order shall survive entry of any order converting or dismissing the Bankruptcy Case.

11. To the extent that the terms of this Order conflict with the terms of any of the Loan

Documents, the terms of this Order shall govern.

12. The provisions of this Order shall remain in full force and effect unless modified or vacated by subsequent order of this Court.

13. The Bankruptcy Court shall retain jurisdiction with respect to all matters pertaining to this Order.

14. The Debtor shall serve a copy of this Order upon (a) the United States Trustee; (b) the Debtor's secured creditors, or their counsel; (c) the Debtor's taxing authorities; and (d) the Debtor's twenty (20) largest unsecured creditors by first class mail within three (3) business days of entry of this Order, which shall be deemed good and sufficient service hereof.

Dated: New York, New York
       November 27, 2023

                                              *s/ David S. Jones*
                                              HONORABLE DAVID S. JONES
                                              UNITED STATES BANKRUPTCY JUDGE

In re 140 West 121 LLC
SDNY Ch 11 Case No: 23-11301(DSJ)
Budget

|  | Nov-23 | | | | Dec-23 | | | | Jan-24 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  | Week11 | Week12 | Week13 | Week14 | Week15 | Week16 | Week17 | Week18 | Week15 | Week16 | Week17 | Week18 |
| **Cash on Hand** | $32,952.00 | $32,607.00 | $15,198.08 | $16,043.08 | $14,963.08 | $15,938.08 | $14,849.16 | $15,869.16 | $14,964.16 | $15,939.16 | $14,850.24 | $15,870.24 |
| **INCOME** | | | | | | | | | | | | |
| Short-term rental1 | | | $1,145.00 | $1,145.00 | $1,245.00 | $1,245.00 | $1,245.00 | $1,245.00 | $1,245.00 | $1,245.00 | $1,245.00 | $1,245.00 |
| Short-term rental2 | | $5,500.00 | $0.00 | | $0.00 | $5,500.00 | $0.00 | $0.00 | $0.00 | $5,500.00 | $0.00 | $0.00 |
| Combined short term rental | $0.00 | $5,500.00 | $1,145.00 | $1,145.00 | $1,245.00 | $6,745.00 | $1,245.00 | $1,245.00 | $1,245.00 | $6,745.00 | $1,245.00 | $1,245.00 |
| Rent (from Sole Member) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $15,000.00 | $0.00 | $0.00 | $0.00 | $15,000.00 | $0.00 | $0.00 |
| TOTAL INCOME: | $0.00 | $5,500.00 | $1,145.00 | $1,145.00 | $1,245.00 | $21,745.00 | $1,245.00 | $1,245.00 | $1,245.00 | $21,745.00 | $1,245.00 | $1,245.00 |
| **EXPENSES** | | | | | | | | | | | | |
| **Debt Service** | | | | | | | | | | | | |
| Senior Loan | | $22,608.92 | | | | $22,608.92 | | | | $22,608.92 | | |
| Second Lien (Forebearance) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
|  | $0.00 | $22,608.92 | $0.00 | $0.00 | $0.00 | $22,608.92 | $0.00 | $0.00 | $0.00 | $22,608.92 | $0.00 | $0.00 |
| **Operating Expenses** | | | | | | | | | | | | |
| Exterminator | $45.00 | | | | $45.00 | | | | $45.00 | | | |
| Cleaning services | $300.00 | $300.00 | $300.00 | $300.00 | $225.00 | $225.00 | $225.00 | $225.00 | $225.00 | $225.00 | $225.00 | $225.00 |
| Tree Maintenance (Pesticide) | | | | | | | | | | | | |
| Con Ed | | | | $1,625.00 | | | | $1,625.00 | | | | $1,625.00 |
| Verizon | | | | | | | | | | | | |
| Water | $0.00 | $0.00 | $0.00 | $300.00 | $0.00 | $0.00 | $0.00 | $300.00 | $0.00 | $0.00 | $0.00 | $300.00 |
| Total: | $345.00 | $300.00 | $300.00 | $2,225.00 | $270.00 | $225.00 | $225.00 | $2,150.00 | $270.00 | $225.00 | $225.00 | $2,150.00 |
| TOTAL EXPENSES: | $345.00 | $22,908.92 | $300.00 | $2,225.00 | $270.00 | $22,833.92 | $225.00 | $2,150.00 | $270.00 | $22,833.92 | $225.00 | $2,150.00 |
| **Ending Cash Balance** | $32,607.00 | $15,198.08 | $16,043.08 | $14,963.08 | $15,938.08 | $14,849.16 | $15,869.16 | $14,964.16 | $15,939.16 | $14,850.24 | $15,870.24 | $14,965.24 |